PEOPLE v COBBS

Docket No. 91356. Argued January 12, 1993 (Calendar No. 1). Decided
August 17, 1993.

James L. Cobbs pleaded guilty in the Genesee Circuit Court,
Philip C. Elliott, J., of kidnapping and assault with a dangerous
weapon. The Court of Appeals, NEFF, P.J., and SHEPHERD and
McDONALD, JJ., reversed and remanded the case for resentenc-
ing before a different judge (Docket No. 128275). The defendant
appeals on the ground that it was not improper for the trial
judge to participate in the formulation of a sentence agree-
ment.

In a unanimous opinion per curiam, the Supreme Court *held:*

At the request of a party, and not on a judge's own initiative,
a judge may state on the record a preliminary evaluation of the
length of sentence that, on the basis of the information avail-
able, appears to be appropriate for the charged offense. To
avoid the potential for coercion, the judge may not state or
imply alternative sentencing possibilities on the basis of future
procedural choices.

Such an evaluation does not bind the judge's sentencing
discretion, however, and a defendant who pleads guilty or nolo
contendere in reliance on an evaluation may withdraw the plea
if the judge later determines that the appropriate sentence
must exceed the preliminary evaluation. A decision not to
sentence in conformity with a preliminary evaluation is not
automatically a basis for recusal.

A defendant who pleads guilty or nolo contendere with
knowledge of the sentence and who later seeks appellate sen-
tence relief must expect to be denied relief on the ground that
the plea demonstrates the defendant's agreement that the
sentence is proportionate to the offense and offender.

Justice BOYLE, joined by Justice LEVIN, concurring, stated
that the court should also be authorized to initiate sentence
discussion at pretrial, provided that the substance of all discus-
sion is placed on the record in the defendant's presence and in
open court.

Reversed.

188 Mich App 324; 469 NW2d 47 (1991) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

State Appellate Defender (by *Sheila N. Robertson*) for the defendant.

Amici Curiae:

*Patrick Shannon,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

*Roman S. Gribbs* and *Barry L. Howard* for Michigan Judges Association.

*James Krogsrud* for Criminal Defense Attorneys of Michigan.

PER CURIAM. The Court of Appeals reversed this defendant's conviction on the ground that the trial judge improperly participated in the formulation of a sentence agreement. We believe that the trial judge did not err, and we therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

This case arises from an incident that occurred on Father's Day in 1989. The defendant wished to see his daughter, and was frustrated by the refusal of the child's mother to permit a visit. To pressure the mother into allowing a visit, the defendant abducted her older daughter. He held the girl hostage for approximately two hours, at times holding a knife to her neck. The defendant surren-

dered after the police persuaded him to release the victim.

The defendant was charged with kidnapping and assault with a dangerous weapon. MCL 750.349, 750.82; MSA 28.581, 28.277.

A *Walker*[1] hearing introduced the trial judge to the facts of this matter. Approximately a month later, the defendant pleaded guilty, as charged. The proceeding began with the following statement from the trial judge:

> Okay. People versus James Louis Cobbs. This case is a case in which there are two counts, Count One, Kidnapping, and Count Two, Assault With a Dangerous Weapon.
>
> My understanding is that essentially the case arises out of a domestic dispute when Mr. Cobbs, the father of the young girl, wanted some visitation with his children and had problems with the mother of the children, and utilized one of the children, a girl of ten, I think, something like that, . . . as a hostage, with a knife, threatening with the knife when the police came and so on, and there's even a video tape of it I understand that pretty much established the crime of felonious assault.
>
> He has no previous record and we have a situation in the Prosecutor's Office where they probably not only want him to plead guilty to everything he's charged with, but would like to have him nailed to the cross, too: and so, because of the lack of any sensible plea bargaining down there, I've indicated today that if he wants to plead guilty as charged, with or without the prosecutor's consent, I'll let him have an understanding that the maximum term would not be more than five years for the kidnapping and that's all it could be, anyway, for the felonious assault, which means he could be sent to prison, if he is sent to prison, for as much

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

as three years and four months to five years,
because the minimum term can't be more than
two-thirds of the maximum term; and although
there is really no plea bargain between the pros-
ecutor and the defendant, the plea would be on
that understanding.

The assistant prosecutor immediately objected
that he had not been a party to any negotiations.
He further objected that the proposed sentences
were "a small price to pay" in light of the trauma
suffered by the victim.

Accepting the defendant's pleas, the circuit
judge stated:

> Okay. I have not agreed upon the possibility of a
> plea or the possible sentence with the prosecutor
> or the defendant or anyone acting in the interests
> of either, except to the extent that I put on the
> record today, my suggestion that apparently was
> agreed to, because it seemed to me—ah—to every-
> body's advantage and considering the number of
> cases that have to be tried, a sensible way to
> resolve this case. It's a shame and it's—ah—send-
> ing him to life in prison isn't gonna solve the
> problem.

Several weeks later, the circuit judge sentenced
the defendant in accordance with his earlier re-
marks. He imposed a sentence of from 40 to 60
months in prison for kidnapping, and from 32 to
48 months in prison for assault with a dangerous
weapon. He explained:

> Okay. Now, it's my turn. This is a case where
> probably it's as terrorizing and serious of assault
> with a dangerous weapon, a knife, as I've ever had
> contact with. It involved an assault on a child, an
> innocent child, and although I'm confident that
> not only did you not hurt her with a knife, you
> would not have hurt her, but it was a terribly

traumatic experience for her and she is apparently
undergoing counseling to overcome the fear that
that experience caused. It all arose out of a Fa-
ther's Day when you wanted to see a child of yours
by the mother of this child and you were not
allowed to. Things got out of hand. Technically,
you held the child as a hostage against her will
and from that standpoint you're technically guilty
of kidnapping, but there's kidnapping and there's
kidnapping, and it's really questionable whether
you should have been charged with kidnapping,
where in a family fight you take a child, although
you commit a felonious assault certainly, to try to
get an opportunity to see your child on Father's
Day. But, whether that's—my view of that is right
or wrong, I have to sentence you for kidnapping
and for felonious assault.

I did, however, engage in a plea agreement that
the sentence for the kidnapping would not be more
than a maximum of five years. In the circum-
stances, I think I should impose the most serious
sentence I can impose consistent with the promise
to you that the maximum would not be more than
five years, because of the apparent psychological
damage done to the child and the severe nature of
the assault.[2]

On appeal, the prosecutor argued that the trial
judge's actions violated the principles stated in
*People v Killebrew,* 416 Mich 189; 330 NW2d 834
(1982). Agreeing, the Court of Appeals remanded
the case for resentencing before a different judge.[3]
188 Mich App 324; 469 NW2d 47 (1991).

[2] The 40-month minimum sentence for kidnapping was a departure
below the recommended range found in the sentencing guidelines (60
to 144 months). In the written explanation for the departure, the
judge stated:

The "Kidnapping" was grabbing a stepchild to force a
commonlaw wife (mother of the victim) to allow him to see his
baby on Father's Day—There are kidnappings and kidnappings.

[3] Before resentencing, the defendant was to be given an opportunity
to withdraw his pleas.

We granted the defendant's application for leave to appeal, and directed the parties to argue whether we should "reconsider the prohibition against judicial involvement in sentence bargaining as announced in *People v Killebrew* . . . ." 439 Mich 1000 (1992).

II

Our decision in *Killebrew* reflected a balance between two conflicting considerations. First, judicial involvement must be limited in order "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." *Id.,* 416 Mich 202.

The coercive potential of judicial involvement is obvious, and stems from the overwhelmingly advantageous bargaining position of the judge. Equally important is the fact that "[t]he public perception of the judge as a neutral arbiter must suffer when the judge descends from the bench to barter with the defendant and prosecutor over the terms of the deal he advocates." *Id.* at 204.

The countervailing consideration is that, in the end, the *judge* must impose a sentence. The Legislature has provided substantial sentencing discretion to the judiciary, and the judge may not abdicate this function by allowing sentence agreements to control the sentencing process.

In light of these considerations, we concluded in *Killebrew* that the judge may not initiate or participate in discussions regarding the sentence that is to be imposed. Rather, "the judge's role in plea negotiations, sentence bargaining included, is limited to consideration of the bargain between the

defendant and the prosecutor. The judge may not become involved in the negotiation of the bargain." *Id.,* 416 Mich 194. We explained:

> In balancing these competing considerations— that the degree of involvement must be kept minimal to avoid a coercive atmosphere and to retain public confidence in the judicial system and that judicial control of sentencing is required by statute —we now hold that a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in the negotiation of the bargain itself. The trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official. [*Killebrew,* 416 Mich 205.]

*Killebrew* permitted a judge to approve or reject a sentence agreement reached by the parties, or a prosecutorial sentence recommendation that was the product of negotiations between the parties. In requiring a judge who rejects a prosecutorial sentencing recommendation to state the sentence that would have been appropriate, this Court also acknowledged the practical impossibility of precluding all judicial involvement in the negotiation process.

### III

A decade has passed since we decided *Killebrew,* and we are satisfied that the principles stated in our 1982 opinion remain sound. However, we are now persuaded that the rules governing judicial participation in sentence discussions should be modified.[4]

---

[4] In the intervening decade, the sentencing guidelines have allowed reasonable expectations to develop regarding the likely consequences of a plea. Sentences are also subject to appellate review for proportionality.

In addition to the procedures approved in *Killebrew,* 416 Mich 206-212, we today recognize an additional manner in which a judge may participate in sentence discussions. At the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.[5]

To avoid the potential for coercion, a judge must not state or imply alternative sentencing possibilities on the basis of future procedural choices, such as an exercise of the defendant's right to trial by jury or by the court.

The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

While a judge remains subject to disqualification for the grounds stated in MCR 2.003, a decision not to sentence a defendant in conformance with a preliminary evaluation is not an automatic basis for recusal. A judge's candid statement of how a case appears at an early stage of the proceedings does not prevent the judge from deciding the case in a fair and evenhanded manner later, when additional facts become known.

---

[5] If the prosecutor is offering to reduce the charge in exchange for a plea of guilty or nolo contendere, the judge likewise may state on the record the sentence that appears to be appropriate for the reduced charge.

IV

Approval of this additional form of judicial participation does not diminish our previously stated determination "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." *Killebrew,* 416 Mich 202. Coercion is avoided when a judge does not initiate a discussion of the sentence, and when a judge does not speculate on the sentencing consequences of future procedural contingencies. The judge's neutral and impartial role is enhanced when a judge provides a clear statement of information that is helpful to the parties.

The question for the judge is simply, "Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?" Justice is advanced and not hindered when fair questions are answered honestly.

The procedure approved in this opinion does not infringe on the rights of the prosecutor. Where a defendant pleads guilty or nolo contendere to the charged offense, there can be no infringement of the prosecutor's charging authority.[6] Neither does this procedure limit the prosecutor's right to introduce additional facts at appropriate points during the remaining pendency of the case, such as during allocution at sentencing.

Similarly, the victim's right to participate must be fully recognized. Crime victims have rights provided in the constitution of this state,[7] and

---

[6] Cf. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972), *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

[7] Const 1963, art 1, § 24.

implemented by a number of statutory provisions.[8]
Among the rights of a crime victim are the right
of allocution at sentencing[9] and to provide an
impact statement for inclusion in the presentence
report.[10] These events will each take place if the
victim wishes, and the judge's final sentencing
decision must await receipt of all the necessary
information.

## V

In *People v Rodriguez*, 192 Mich App 1, 9; 480
NW2d 287 (1991), the Court of Appeals held that a
defendant may waive the constitutional appeal of
right from a plea-based conviction, in exchange for
charging or sentencing concessions. It remains for
the prosecutor and the defendant to determine in
each case whether to enter into a bargain that
includes such a waiver.

However, we caution that a defendant who
pleads guilty or nolo contendere with knowledge of
the sentence, and who later seeks appellate sen-
tence relief under *People v Milbourn*, 435 Mich
630; 461 NW2d 1 (1990), must expect to be denied
relief on the ground that the plea demonstrates
the defendant's agreement that the sentence is
proportionate to the offense and offender.[11]

## VI

We recognize that there remain wide differences

[8] See, e.g., the Crime Victim's Rights Act, MCL 780.751 *et seq.;*
MSA 28.1287(751) *et seq.*

[9] MCR 6.425(D)(2)(c); MCL 780.765; MSA 28.1287(765).

[10] MCL 780.764; MSA 28.1287(764).

[11] This is so, whether the defendant's knowledge results from a
sentence bargain or prosecutorial recommendation as discussed in
*Killebrew,* or from a judge's statement of the sort discussed in this
opinion.

of opinion in this area. As we indicated in *Killebrew,* Standard 14-3.3 of the American Bar Association's Standards for Criminal Justice (2d ed) permits limited judicial involvement in negotiations concerning the plea and sentence, whereas Rule 11(e)(1) of the Federal Rules of Criminal Procedure prohibits judicial participation in such discussions. The briefs submitted by the parties demonstrate that other jurisdictions retain divergent rules on this subject.

The procedure outlined in this opinion is one that Michigan courts and judges may decline to utilize. When asked to state a preliminary impression regarding a pending case, a judge may prefer not to make such a disclosure. This preference may stem from the circumstances of a particular case, including the incomplete nature of the record, or it may reflect a broad preference by the court or judge not to participate in sentence discussions of this sort.

VII

The procedure that the circuit judge followed in this case accords with our holding today, except that the judge's disclosure appears to have been made on his own motion, rather than upon the defendant's request. However, we will not reverse on that basis, because the judge did not have the benefit of this opinion at the time he ruled. In future cases, however, we caution that a judge may not initiate discussions regarding the appropriate disposition of the case.

With that exception, we see no error in the ruling of the circuit court, and we therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

BOYLE, J. (*concurring*). Because I do not believe that the "potential" coercive effect on the defendant, the function of the trial judge as a neutral arbitrator, or the public perception of the judge as an impartial dispenser of justice are offended by the judge's initiation of sentence discussion, I would authorize the parties *or* the court to initiate sentence discussion at pretrial, provided that the substance of all discussions is placed on the record in defendant's presence and in open court. In my view, the integrity of the institution and the policy choices of the public are enhanced by maximizing the truth of the sentencing process. Since the interests of the prosecution, the victim, and the defendant are all protected in the sentencing process, I can see no reason to deprive inexperienced counsel, whether prosecutors or defense lawyers, of the benefit of judge-initiated discussion.

The lead opinion observes that the "coercive potential of judicial involvement is obvious, and stems from the overwhelmingly advantageous bargaining position of the judge." *Ante,* p 281. To be sure, a judge should not state or imply alternative sentencing possibilities on the basis of the defendant's exercise of the defendant's right to trial by jury or by the court. The reality is, however, that whether the judge initiates discussions, the parties do so, or no discussions are held, the overwhelming advantageous position of the judge is a constant factor in the process. So, too, is a defense counsel's effort to infer the sentencing possibilities that will be most beneficial to the client. Absent any implication from the judge, a diligent defense counsel may very well conclude that the exposure of the client and the details of the events during a trial

will inevitably result in a greater sentence. These are the same considerations that drive settlements in civil cases, and the realistic assessment of alternative outcomes is in many instances the most effective lawyering that can be offered to the client.

As long as judges exercise the authority given today with responsible attention to a client's desire for a trial, the client and the attorney can only be benefited by the judge's assessment of sentencing range.

The public's perception of the process is a different and equally delicate matter. However, the concern expressed in *People v Killebrew,* 416 Mich 189; 330 NW2d 834 (1982), has to some extent been addressed by the constitutional protection of victims' rights, Const 1963, art 1, § 24, which insures that the sentencing process is not a closed arrangement involving simply the prosecutor and the court, defense counsel and the client.

The Court's opinion today does not obligate any judge to become involved in the plea bargaining process. It simply authorizes involvement, on the conditions set forth, if the judge's personal philosophy regarding the propriety of such involvement is not offended.

A judge who chooses not to become involved has no political responsibility for a bargained sentence and that is a wholly appropriate position to take. Where, however, a judge is willing to assume that responsibility, I can think of no reason why that truth should not be communicated to the representatives of the people and the defendant.

LEVIN, J., concurred with BOYLE, J.