*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARQUISE DESHANE HARDIN,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 364559
Kent Circuit Court
LC No. 19-009456-FC

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying his motion to withdraw his plea. Defendant pleaded no contest to assault with intent to commit murder, MCL 750.83; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve consecutive terms of 84 months (7 years') to 50 years' imprisonment for assault with intent to commit murder, and 2 years' imprisonment for felony-firearm. On appeal, defendant argues that the trial court improperly intervened in the plea-bargaining process in violation of the principles outlined by the Supreme Court in *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982), and *People v Cobbs*, 443 Mich 276, 281; 505 NW2d 208 (1993). Defendant contends that he had alibi evidence to support his claim of innocence, and, but for the trial court's interference in the plea-bargaining process, he would not have entered a plea. We disagree and affirm.

## I. FACTS

This case stems from a shooting that took place in June 2019, in which the victim, Torey Sturdivant, suffered multiple gunshot wounds. Defendant was charged as a fourth-offense habitual offender, MCL 769.12(1)(a), with assault with intent to commit murder; being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and felony-firearm with a second-

---

[1] *People v Hardin*, unpublished order of the Court of Appeals, entered March 21, 2023 (Docket No. 364559).

conviction enhancement. The prosecutor offered defendant a plea deal, which required him to plead no contest to assault with intent to commit murder and felony-firearm. In exchange, defendant would not be sentenced as a fourth-offense habitual offender, the felon-in-possession charge would be dismissed, and defendant's felony-firearm offense would be charged as a first conviction. Pursuant to the plea deal, defendant would serve consecutive terms of 10 years' imprisonment for assault with intent to commit murder and 2 years' imprisonment for felony-firearm. In July 2021, defendant rejected this offer and asserted his right to a trial.

In November 2021, the trial court also offered defendant a *Cobbs* evaluation[2], which required defendant to plead no contest to the same charges in the prosecutor's deal, but defendant would only serve a minimum of seven years' imprisonment for assault with intent to commit murder and two years' imprisonment for felony-firearm. Defendant rejected this offer. However, several months later, at a hearing in April 2022, defendant accepted the trial court's offer.

Defendant moved to withdraw his no-contest plea on the basis of impermissible judicial interference with the plea-bargaining process and actual innocence pursuant to an alibi defense, arguing that it was improper for the trial court to insert itself into the plea process under the Supreme Court's decisions in *Cobbs*, 443 Mich at 281, and *Killebrew*, 416 Mich at 189. Defendant also asserted that he had alibi evidence from his boss that would help prove his innocence.

At the hearing on defendant's motion, the trial court acknowledged that it could have "made a better record" in the case, but it ultimately denied defendant's motion on the basis that it did not believe that the trial court improperly interjected itself into the plea process under the totality of the circumstances. In doing so, the trial court stated:

> The prosecutor was very clear about the offer to resolve the case. She always held that it was going to be ten years for assault with intent to murder, plus two years consecutive on the felony firearm.
>
> The defense counsel . . . took this offer to her client, which he rejected. During some status conferences held by the Court in chambers, at some point—and I'm clear about this. I didn't state it on the record, but Ms. Johnson did request a *Cobbs* evaluation from the Court, which the Court believed was unreasonably low. I can't remember the exact details. But I think it was like, [defendant] will agree to plead guilty or no contest if he will—and he'll agree to do two years on the felony firearm and then credit time served on the assault with intent to murder. It also should be noted that [defendant] was in jail and not getting any jail credit because he was on parole during the pendency of these—these proceedings.
>
> In response to [defense counsel's] inquiry, the Court evaluated the facts of the case. And I knew quite about—quite a bit about the case due to any number of pretrial motions as well as reviewing prelim transcripts. The Court offered what it

---

[2] *People v Cobbs* 443 Mich 276; 505 NW2d 208 (1993).

did, which was seven years and seven years on the assault with intent to murder, plus two for the felony firearm.

> In the Court's opinion, this was done at the request of counsel. Again, I did not state that on the record, but we had some exchanges back and forth. But I know Ms. Johnson made a request to the Court for a very low *Cobbs* agreement, which the Court rejected. But in response, the Court stated that I was willing to do the seven plus two which was stated on the record.

The trial court also denied defendant's motion on the basis of actual innocence because it did not believe that there was sufficient evidence of defendant's alibi to warrant withdrawal of his plea.

Defendant now appeals.

## II. STANDARD OF REVIEW

We review a trial court's factual findings for clear error. MCR 2.613(C); MCR 6.001(D); *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). A trial court's findings of fact are clearly erroneous if "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Johnson*, 502 Mich at 565 (quotation marks and citation omitted). "[A]ppellate courts need not refrain from scrutinizing a trial court's factual findings, nor may appellate courts tacitly endorse obvious errors under the guise of deference." *Id*. (quotation marks and citation omitted).

We review "for an abuse of discretion a trial court's denial of a defendant's motion to withdraw a plea." *People v Fonville*, 291 Mich App 363, 376; 804 NW2d 878 (2011). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Johnson*, 502 Mich at 564 (quotation marks and citation omitted).

## III. ANALYSIS

Defendant argues that the trial court impermissibly intervened in the plea-bargaining process in violation of *Killebrew*, 416 Mich at 189, and *Cobbs*, 443 Mich at 276. Defendant contends that, but for the trial court's involvement, he would not have entered a plea.

In *Killebrew*, 416 Mich at 189, the Supreme Court addressed the appropriate role of the trial court in plea negotiations. It held that "judicial participation must be limited in order to minimize the coercive effect of such participation on the defendant, to ensure the voluntariness of plea, and to preserve public confidence in the judicial system." *Id*. at 204-205. In so ruling, the Supreme Court concluded that "a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement" or "engage in the negotiation of the bargain itself." *Id*. at 205. Rather, "[t]he trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official." *Id*. The Supreme Court noted that "[t]he problem of coercion arises from the disparate bargaining positions of the judge and the defendant: the judge wields the decisive sentencing power to which the defendant must submit." *Id*. at 202. Therefore, if the trial court "exert[s] or even seem[s] to exert the authority of this position to induce the defendant to plead guilty, the voluntariness of the defendant's subsequent waiver of his right to a jury trial becomes questionable." *Id*.

In *Cobbs*, 443 Mich at 281, the Supreme Court affirmed its holding in *Killebrew*, stating that "[t]he coercive potential of judicial involvement is obvious, and stems from the overwhelmingly advantageous bargaining position of the judge." The Supreme Court also concluded that "the rules governing judicial participation in sentence discussions" needed to be modified. *Id*. at 282. It held that "[a]t the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Id*. at 283. The Supreme Court clarified that, if the prosecutor offers a reduced charge in exchange for a plea, "the judge likewise may state on the record the sentence that appears to be appropriate for the reduced charge." *Id*. at 283 n 5. Further, it cautioned that "a judge may not initiate discussions regarding the appropriate disposition of the case." *Id*. at 286.

Defendant argues that the trial court's *Cobbs* evaluation was made on its own initiative in violation of *Cobbs*. *Id*. at 283. We disagree. At the hearing on defendant's motion to withdraw his plea, the trial court stated on the record that its offer to defendant was "done at the request of counsel." The trial court explained:

> Although it was not stated on the record at the time, the Court did not initiate the *Cobbs* agreement. [Defense counsel] approached the Court about making the defendant a *Cobbs* offer. The defendant—the Court rejected defendant's proposal but did offer the seven plus two for reasons stated on the record. In the Court's opinion, this did not violate the principles the Michigan Supreme Court outlined in *Cobbs*.

In making this determination, the trial court made a factual finding that was not clearly erroneous. Although the trial court initially failed to articulate on the record that defense counsel requested a *Cobbs* evaluation, this was noted on the record at the hearing on defendant's motion to withdraw his plea. Notably, defendant did not provide any evidence to refute the trial court's finding that it did not initiate the *Cobbs* agreement. Defendant also did not provide any reasoning why he was unable to provide such evidence, such as an affidavit from his previous attorney supporting his claim that the trial court initiated the *Cobbs* agreement. Rather, defendant relied entirely on his assertion that, because he rejected "everything else" before the trial court's offer, the only reason he accepted a plea deal was because the trial court intervened in the plea-bargaining process. This reason, alone, does not leave this Court with a definite and firm conviction that a mistake was made.

The Supreme Court has held that "[t]o avoid the potential for coercion, a judge must not state or imply alternative sentencing possibilities on the basis of future procedural choices, such as an exercise of the defendant's right to trial by jury or by the court." *Id*. The trial court did state, after the prosecutor offered defendant a plea deal, that if he was convicted at trial, he would be "looking at a 30-year minimum sentence." The trial court also cautioned that "it could be a lot worse than that," including up to "50 or 60 years." Although the trial court's statements regarding the possible sentence that defendant faced if convicted at trial might be considered coercive under *Cobbs*, it did not have a coercive effect in this case. Immediately after the trial court's discussion of the potential sentence that he faced following a conviction at trial, defendant rejected the prosecutor's plea deal. Defendant then proceeded to also reject the trial court's offer of a shorter

sentence. Therefore, defendant continued to assert his right to a jury trial despite any statements by the trial court that could be considered coercive.

The time-line of events in this case also supports a conclusion that any judicial participation in the plea-bargaining process was not coercive. Defendant rejected the prosecutor's plea deal in July 2021. Several months later, in November 2021, defendant rejected the trial court's offer. A jury trial was scheduled for April 25, 2022; however, it never took place because defendant accepted the trial court's offer on April 19, 2022. Notably, defendant's codefendant was found guilty at a jury trial on April 14, 2022. Following this, defendant decided to accept the trial court's sentencing offer and forgo a jury trial. The timing of his codefendant's convictions certainly raises the question of defendant's true motive for accepting the trial court's sentencing offer. Whereas defendant asserts that he was coerced into accepting the offer, it appears more likely that, after seeing the outcome of his codefendant's trial, he decided that the plea deal was a better avenue for him to take.

This conclusion is supported by the fact that the offer that defendant accepted was the exact same offer that he rejected in November 2021. The trial court did not alter its offer in any way in order to entice defendant to accept it. Instead, defendant, seemingly on his own volition, accepted the trial court's offer nearly five months later only after his codefendant was found guilty at trial. The fact that defendant agreed that he entered the plea freely and voluntarily and understood the rights he was relinquishing by entering the plea further supports the conclusion that defendant was not coerced to accept a plea deal. Therefore, we conclude that the trial court's factual finding that it did not initiate the *Cobbs* agreement was not clearly erroneous. Further, any error that the trial court may have made, such as making some coercive statements, was harmless because it did not have a coercive effect on defendant.

Having so concluded, it necessarily follows that the trial court did not abuse its discretion when it denied defendant's motion to withdraw his plea. Defendant contends that he would not have pleaded no contest to assault with intent to commit murder and felony-firearm but for the trial court's coercive effect. As discussed earlier, defendant initially rejected the trial court's offer, which indicates that the offer did not have a coercive effect on defendant. Further, because the trial court did not initiate the *Cobbs* agreement, the agreement did not violate the principles outlined by the Supreme Court in *Cobbs*. Therefore, because the trial court's offer fell within the range of reasonable and principled outcomes, the trial court did not abuse its discretion when it denied defendant's motion on the basis of improper judicial intervention.

Defendant further argues that the trial court abused its discretion when it denied defendant's motion to withdraw his plea on the basis of actual innocence. Defendant does not, however, describe in-depth his arguments regarding this issue on appeal. Rather, defendant merely states that he was not involved in the shooting and had an alibi. Defendant attached to his application to withdraw his plea a letter from Jereme Lambert, whom defendant asserts was his boss, which stated that defendant worked from 9:00 a.m. to 4:00 p.m. on June or July 25 and from 8:00 a.m. to 4:00 p.m. on June or July 26. The month indicated in the letter is unclear because it appears as though the "l" was formed into an "n" and a "y" was written overtop of an "e," which calls into question the authenticity of the document. In denying defendant's motion to withdraw his plea on this basis, the trial court stated:

This is very interesting. We went through the file. I went through it, my law clerk did as well. This case was pending for three years, from 2019 of June, approximately, to approximately June of 2021. There is nowhere mention of any alibi by [defendant]. In fact, I think there's evidence that he had a GPS tether on him related to this parole and that he was in the vicinity of the alleged—alleged shooting at the time it occurred.

Now, he did provide a letter from someone named Jereme Lambert. It's not notarized. There is a question about whether the dates in question are July or June of 25 and 26. It's also not—the year is not mentioned. I don't think that's sufficient evidence to allow him to withdraw his plea.

The fact that defendant had three years to assert an alibi defense and only did so in his application to withdraw his plea is questionable. The authenticity and accuracy of the document is also questionable, as noted by the trial court. It was within the range of reasonable and principled outcomes for the trial court to conclude that this document was insufficient to support a withdraw of defendant's plea. The trial court, therefore, did not abuse its discretion when it denied defendant's motion to withdraw his plea on the basis of actual innocence.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood

-6-